UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KRISHNA VENKATA MELNATTUR,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES, et al.,<br><br>Defendants. | Civil Action No. 20-3013 (JDB) |

**MEMORANDUM OPINION**

Plaintiff Krishna Venkata Melnattur filed this action against the United States Citizenship and Immigrations Services ("USCIS") and high-level agency officials, alleging that USCIS denied his immigration visa petition in violation of its own regulations, the Administrative Procedure Act, and the Fifth Amendment's Due Process Clause. See Compl. [ECF No. 1] ¶¶ 33–50. Before the Court is defendants' motion to transfer this case, pursuant to 28 U.S.C. § 1404(a), to either the Eastern District of Missouri or the District of Nebraska and to extend their time for responding to plaintiff's complaint. For the reasons set forth below, the Court will grant both motions, transferring this case to the District of Nebraska and extending defendants' time to respond until 21 days after this case is docketed in that court.

**Background**

Krishna Melnattur is a doctor currently employed as a laboratory researcher in neurobiology at the Washington University School of Medicine in St. Louis, Missouri. See Defs.' Combined Mot. to Transfer Venue & for Extension of Time ("Gov't Mot.") Ex. A [ECF No. 4-2]

1

at 1, 5–6.[1]  Dr. Melnattur is a citizen of India and currently holds an H1-B temporary worker visa authorizing his employment in the United States.  Compl. [ECF No. 1] ¶¶ 1–2.  On May 29, 2020, Dr. Melnattur filed an Immigrant Petition for Alien Workers (Form I-140) with USCIS, seeking an EB-1 visa as an "alien of extraordinary ability."  Id. ¶¶ 3–4; see also 8 C.F.R. § 204.5(h); 8 U.S.C. § 1153(b)(1)(A).  Dr. Melnattur's petition was assigned to the Nebraska Service Center ("NSC"), located in Lincoln, Nebraska, for processing and adjudication.  See Pl.'s Mem. in Opp'n to Defs.' Mot. to Transfer ("Pl.'s Opp'n") [ECF No. 5] at 6; Gov't Mot. Ex. A.

A noncitizen seeking an EB-1 visa on the grounds of "extraordinary ability" must submit evidence demonstrating either a "one-time achievement (that is, a major, international recognized award)" or three of ten listed criteria suggesting the petitioner's "extraordinary ability."  8 C.F.R. § 204.5(h)(3); see also 6 USCIS Policy Manual, pt. F, ch. 2 § B(2).  Alongside his initial petition, Dr. Melnattur submitted evidence that he contended satisfied five of these ten criteria.  Compl. ¶ 7.  But USCIS was not convinced.  On June 23, 2020, the NSC issued a Request for Evidence, informing Dr. Melnattur that it considered only two of the criteria met and asking for additional evidence to support the other three criteria he had argued were satisfied.  Id. ¶¶ 7–8; Gov't Mot. Ex. B at 3–5.  Dr. Melnattur timely complied with this request.  Compl. ¶ 9.  Nonetheless, USCIS issued a Decision denying his visa petition on the grounds that he had not satisfied a required third criteria of eligibility.  Id. ¶ 10; Gov't Mot. Ex. A.

---

[1] Although both USCIS's "Decision" denying plaintiff's petition and its earlier "Request for Evidence" to Dr. Melnattur were referenced in plaintiff's complaint, these documents are only before the Court as exhibits to the government's transfer motion.  See Gov't Mot. Ex. A (Decision); Gov't Mot. Ex. B [ECF No. 4-3] (Request for Evidence).  Plaintiff has not contested the accuracy of these exhibits.  The Court will thus treat them as part of the pleadings for purposes of deciding this motion.  Cf. Vanover v. Hantman, 77 F. Supp. 2d 91, 98 (D.D.C. 1999) ("[W]here a document is referred to in the complaint and is central to plaintiff's claim, such a document attached to the motion papers may be considered [in deciding the motion]." (citing Greenberg v. The Life Ins. Co. of Va., 177 F.3d 507, 514 (6th Cir.1999))).

On October 20, 2020, Dr. Melnattur brought the present lawsuit against USCIS, then-Acting Director Kenneth Cuccinelli,[2] and Loren Miller, the director of the NSC. Compl. at 1. He alleges a host of errors in USCIS's consideration of his petition, see Compl. ¶¶ 13–16, such that, he contends, USCIS's denial of his petition was arbitrary, capricious, and contrary to law in violation of the Administrative Procedure Act, see id. ¶ 37. Dr. Melnattur also alleges that USCIS failed to issue a notice of intent to deny his petition as required by 8 C.F.R. § 103.2(b)(16)(i), see Compl. ¶¶ 47–49, and that, by "fail[ing] to give [him] a meaningful opportunity to challenge this denial," the agency violated his due process rights under the Fifth Amendment to the U.S. Constitution, id. ¶ 44. On December 22, 2020, defendants filed the instant motion to transfer Dr. Melnattur's suit to either the District of Nebraska or the Eastern District of Missouri and also to extend the deadline for responding to plaintiff's complaint. See Gov't Mot. [ECF No. 4]. Briefing on this motion is now complete, and the question is ripe for adjudication.

**Legal Standard**

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer" a civil action "to any other district where it might have been brought." 28 U.S.C. § 1404(a). A district court has broad "discretion . . . to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" Ngonga v. Sessions, 318 F. Supp. 3d 270, 274 (D.D.C. 2018) (quoting Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988)). The moving party bears the burden of establishing that transfer is warranted under § 1404(a). Aracely, R. v. Nielsen, 319 F. Supp. 3d 110, 127 (D.D.C. 2018).

---

[2] Pursuant to Federal Rule of Civil Procedure 25(d), if a public officer named as a party to an action in his official capacity ceases to hold office, the Court will automatically substitute that officer's successor. See Fed. R. Civ. P. 25(d). Hence, the Court substitutes USCIS Director Ur M. Jaddou for Kenneth Cuccinelli.

The inquiry under § 1404(a) is "two-fold." Wei Lai Dev. LLC v. USCIS, Civ. A. No. 21-887 (RDM), 2021 WL 2073403, at *3 (D.D.C. May 24, 2021). First, the court must determine whether plaintiff could have brought suit in the transferee court. See id. This question "turns on the general venue statue, 28 U.S.C. § 1391." Gyau v. Sessions, Civ. Case No. 18-407, 2018 WL 4964502, at *1 (D.D.C. Oct. 15, 2018). Then, the court determines whether the proposed transfer is "in the interest of justice," 28 U.S.C. § 1404(a), by "'balanc[ing] a number of case-specific factors[]' related to both the public and private interests at stake." Douglas v. Chariots for Hire, 918 F. Supp. 2d 24, 31 (D.D.C. 2013) (quoting Stewart Org., 487 U.S. at 29).

## Analysis

The government asks this Court to transfer the instant action to either the Eastern District of Missouri (where plaintiff resides) or the District of Nebraska (where the NSC is located). The District of Columbia, the government contends, "has little, if any, connection to this case because none of the challenged events occurred here and Plaintiff does not reside here." Defs.' Combined Mem. in Supp. of Mot. to Transfer Venue & Mot. for Extension of Time ("Gov't Mem.") [ECF No. 4-1] at 1. Dr. Melnattur resists this proposed transfer, arguing that his suit has substantial connections to this District because of defendants' operations here, their alleged "direction" of the denial of his petition, and their supervision of the guidelines and procedures governing the adjudication of such petitions. See Pl.'s Opp'n at 3, 8.

The Court agrees with the government. As dozens of other courts in this District have held in materially identical cases,[3] this case "could have and should have been filed" in a different

---

[3] See, e.g., PSV Enters., LLC v. USCIS, No. 20-cv-2287 (KBJ), 2021 WL 2115251 (D.D.C. May 25, 2021); Wei Lai, 2021 WL 2073403; Pengbo Li v. Miller, Civ. A. No. 20-1122 (EGS), 2021 WL 1124541 (D.D.C. Mar. 24, 2021); Ike v. USCIS, Case No. 20-cv-1744 (CRC), 2020 WL 7360214 (D.D.C. Dec. 15, 2020); EfficientIP, Inc. v. Cuccinelli, Case No. 1:20-cv-01455 (TNM), 2020 WL 6683068 (D.D.C. Nov. 12, 2020); Wolfram Alpha LLC v. Cuccinelli, 490 F. Supp. 3d 324 (D.D.C. 2020); Gyau, 2018 WL 4964502; Ngonga, 318 F. Supp. 3d 270. In addition, another substantial chunk of similar suits involving delays in processing (as opposed to denials of) immigration

forum. Ike v. USCIS, Case No. 20-cv-1744 (CRC), 2020 WL 7360214 (D.D.C. Dec. 15, 2020). For the reasons set forth below, the Court will grant the government's motion to transfer this case to the District of Nebraska and to extend the deadline for responding to plaintiff's complaint.

I. **Venue in Transferee Courts**

The first step in assessing a motion to transfer under § 1404(a) is to determine whether the case "might have been brought" in the transferee court by determining if venue would be proper there under 28 U.S.C. § 1391.[4] See Wei Lai, 2021 WL 2073403, at *3. In this case, the answer is yes with respect to both proposed transferee courts.

Suits against "an agency of the United States" or against "employee[s] of the United States . . . acting in [their] official capacity" may be brought in any "district in which (A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, . . . or (C) the plaintiff resides." 28 U.S.C. § 1391(e). Plaintiff currently resides

---

petitions have also been uniformly transferred out of this District. See Akinyode v. U.S. Dep't of Homeland Sec., Civ. A. No. 21-110 (JDB), 2021 WL 3021440 (D.D.C. July 16, 2021); Claros v. Cowan, Civ. A. No. 21-609 (JEB), 2021 WL 1820209 (D.D.C. May 6, 2021); Bahena v. Renaud, Civ. A. No. 21-291 (RDM), 2021 WL 1820232 (D.D.C. May 6, 2021); Pasem v. USCIS, Case No. 20-cv-344 (CRC), 2020 WL 2514749 (D.D.C. May 15, 2020); Aishat v. U.S. Dep't of Homeland Sec., 288 F. Supp. 3d 261 (D.D.C. 2018).

[4] It is necessary to touch on the propriety of venue in this District. Transfer under § 1404(a) is only appropriate if venue is also proper in the district in which the suit is initially brought; otherwise, 28 U.S.C. § 1406(a) is the appropriate mechanism for transfer. See generally Atl. Marine Const. Co., Inc. v. U.S. Dist. Ct. for W. Dist. of Tex., 571 U.S. 49, 55–57, 59–60 (2013). The residence of employees of the United States sued in their official capacity "is determined on the basis of the official residence of the federal officer or agency." Bourdon v. U.S. Dep't of Homeland Sec., 235 F. Supp. 3d 298, 304 (D.D.C. 2017) (quoting Franz v. United States, 591 F. Supp. 374, 377 (D.D.C. 1984)). But although USCIS used to be headquartered in Washington, D.C., the agency recently moved its headquarters to Camp Springs, Maryland, effective December 2020. See Wei Lai, 2021 WL 2073403, at *3 n.5; Bahena v. Renaud, No. CV 21-291 (RDM), 2021 WL 1820232, at *2 (D.D.C. May 6, 2021). Since neither party has challenged the propriety of venue in this District, see Defs.' Reply in Supp. of Mot. to Transfer Venue ("Gov't Reply") [ECF No. 6] at 2 ("There is no dispute Plaintiff has named Defendants residing in this District."), the Court deems any argument to the contrary waived. And even if venue were improper in the District of Columbia, neither the result of this motion nor the Court's reasoning would change: § 1406(a) also permits a court to transfer a case "to any district or division in which it could have been brought" "if it be in the interest of justice," 28 U.S.C. § 1406(a), and the framework for assessing a transfer under § 1406(a) is essentially identical to that under § 1404(a), see, e.g., Bahena, 2021 WL 1820232, at *2; cf. Claros v. Cowan, No. CV 21-609 (JEB), 2021 WL 1820209, at *1 (D.D.C. May 6, 2021) ("[A]lthough Plaintiffs and Defendants disagree about whether venue is proper in this District, the Court need not wade into that controversy today. Instead, it will proceed with the § 1404(a) transfer framework . . . .").

in St. Louis, Missouri, located in the Eastern District of Missouri.  See Gov't Mem. at 3; see also Pl.'s Opp'n at 5 (acknowledging that "Plaintiff lives in the State of Missouri").  Venue thus would be proper in that district under § 1391(e)(1)(C).

Venue would also be proper in the District of Nebraska.  Defendant Loren Miller is the Director of the NSC located in Lincoln, Nebraska.  E.g. Compl. ¶ 22.  Miller thus "resides" in Nebraska for venue purposes, as that is where "[his] official duties are performed."  See Lamont v. Haig, 590 F.2d 1124, 1128 n.19 (D.C. Cir. 1978).  In addition, Dr. Melnattur's petition was processed and adjudicated by the NSC in Nebraska, meaning "a substantial part of the events or omissions giving rise" to this claim occurred in that state.  See PSV Enters., LLC v. USCIS, No. 20-cv-2287 (KBJ), 2021 WL 2115251 (D.D.C. May 25, 2021); Pengbo Li v. Miller, Civ. A. No. 20-1122 (EGS), 2021 WL 1124541 (D.D.C. Mar. 24, 2021).  Venue is thus doubly proper in the District of Nebraska.

Having established the propriety of venue in both the Eastern District of Missouri and the District of Nebraska, the Court now turns to whether it is in the interest of justice to transfer this case to either proposed of those courts.

## II.   The Balance of Public and Private Interests

In assessing the justice of a proposed transfer under § 1404(a), the Court balances private and public interest factors implicated by the transfer.  See Bourdon, 235 F. Supp. 3d at 305.  Courts in this District weigh six private interest factors when considering a motion to transfer: "(1) the plaintiff's choice of forum, (2) the defendant's choice of forum, (3) where the claim arose, (4) the convenience of the parties, (5) the convenience of the witnesses, and (6) the ease of access to sources of proof."  Wolfram Alpha LLC v. Cuccinelli, 490 F. Supp. 3d 324, 331 (D.D.C. 2020) (citing Aftab v. Gonzalez, 597 F. Supp. 2d 76, 80 (D.D.C. 2009)).  There are then three public

6

interest factors to consider as well: "(1) the transferee court's familiarity with the governing laws and the pendency of any related actions; (2) the relative congestion of calendars in each court; and (3) the local interest in resolving the controversy." Akinyode v. United States Dep't of Homeland Sec., Civ. A. No. 21-110 (JDB), 2021 WL 3021440, at *5 (D.D.C. July 16, 2021) (citing Aguilar v. Michael & Sons Servs., Inc., 292 F. Supp. 3d 5, 11 (D.D.C. 2017)). The Court takes these two sets of factors in turn.

### a. Private Interest Factors

When considering the transfer of a lawsuit, "courts typically defer heavily to plaintiffs' choice of forum." Id. at *3; see also Aftab, 597 F. Supp. 2d at 80 ("[P]laintiff's choice of forum is given paramount consideration." (quoting Air Line Pilots Ass'n v. Eastern Air Lines, 672 F. Supp. 525, 526 (D.D.C.1987))). But courts do not afford such deference unthinkingly. Rather, the deference accorded a plaintiff's choice "is lessened when the plaintiff's choice is not the plaintiff's home forum, and is at its nadir when the 'plaintiff's forum choice lacks meaningful ties to the controversy and [has] no particular interest in the parties or subject matter,'" Wei Lai, 2021 WL 2073403, at *4 (quoting S. Utah Wilderness All. v. Norton, 315 F. Supp. 2d 82, 86 (D.D.C. 2004)); see also PSV Enters., 2021 WL 2115251, at *3 ("[D]eference is 'weakened' when . . . there is no meaningful 'nexus between the case and the plaintiff's chosen forum.'" (quoting Fed. Hous. Fin. Agency v. First Tenn. Bank Nat'l Ass'n, 856 F. Supp. 2d 186, 192 (D.D.C. 2012))). Such is the case here.

Plaintiff resides in the Eastern District of Missouri, yet he has chosen to bring suit several hundred miles away from his home. This reduces the deference accorded his choice. Moreover, "when the forum preferred by the plaintiff is not his home forum, and the defendant prefers the plaintiff's home forum, then there is little reason to defer to the plaintiff's preference." Claros,

7

2021 WL 1820209, at *2 (first emphasis added) (citation omitted).  In addition, there is no meaningful connection between Dr. Melnattur's claims and the District of Columbia.  As addressed in greater depth below, Dr. Melnattur's petition was handled and decided exclusively in Nebraska, and he has made no credible allegation of any action in the District of Columbia that had any bearing on the errors alleged in this suit.  In light of plaintiff's choice to sue in a forum far from his home and without a meaningful nexus to the claims in this suit, the Court's deference to plaintiff's chosen forum is "at its nadir."  Wei Lai, 2021 WL 2073403, at *4.

Relatedly, a defendant's choice of forum is typically granted deference only when they can "'establish that the added convenience and justice of litigating in their chosen forum overcomes' any deference to the Plaintiffs' choice of venue."  Claros, 2021 WL 1820209, at *2 (quoting Tower Labs, Ltd. v. Lush Cosms. Ltd., 285 F. Supp. 3d 321, 326 (D.D.C. 2018)).  Seeing as plaintiff's choice of venue here receives no deference and defendants seek transfer either to plaintiff's home forum or to the forum in which the claim arose, defendants' choice of forum in this case merits some deference.

The place in which plaintiff's claim arose, however, is first among equals when weighing the private interest factors.  See Bourdon, 235 F. Supp. 3d at 305 (noting that where the plaintiff's claims arose was "of predominant importance"); see also Wolfram Alpha, 490 F. Supp. 3d at 331 ("The location of activities giving rise to the action weighs heavily in favor of transfer."). "Transfer is favored when 'the material events that form the factual predicate of a plaintiff's claim did not occur in his chosen forum.'"  Aishat v. U.S. Dep't of Homeland Sec., 288 F. Supp. 3d 261, 269 (D.D.C. 2018) (quoting Douglas, 918 F. Supp. 2d at 32).

"[I]n APA cases like this one, the underlying claim typically arises 'where the decisionmaking process occurred.'"  McAfee, LLC v. USCIS, No. 19-cv-2981 (DLF), 2019 WL

6051559, at *1 (D.D.C. Nov. 15, 2019) (quoting Gyau, 2018 WL 4964502, at *2). In general, "[t]he decisionmaking process for adjudicating . . . visa applications occurs in USCIS service centers around the country," Pasem v. USCIS, Case No. 20-cv-344 (CRC), 2020 WL 2514749, at *3 (D.D.C. May 15, 2020), and plaintiff concedes that his petition was "assigned to [the NSC]." Pl.'s Opp'n at 6. Moreover, both the June 23rd Request for Evidence and September 22nd Decision were printed on NSC letterhead, list a return address in Lincoln, Nebraska, and were signed by defendant Loren Miller, Director of the NSC. See Gov't Mot. Ex. A; Gov't Mot. Ex. B. Although plaintiff's complaint studiously avoids mentioning where his petition was processed, it is clear to the Court that Dr. Melnattur's petition was handled, adjudicated, and denied at the NSC in Nebraska. This suit, which challenges only the handling, adjudication, and denial of plaintiff's petition, thus arose in Nebraska. See Compl. ¶¶ 13–16 (articulating objections to how NSC adjudicators assessed the evidence submitted); see also Pengbo Li, 2021 WL 1124541, at *4 ("[T]he claims arose primarily in the District of Nebraska because NSC is the center that processed and denied Plaintiffs' petition. . . . [A]ny alleged error concerning this decision would have been committed by NSC in the District of Nebraska." (internal quotation marks and citations omitted)).

Notwithstanding this straightforward analysis, plaintiff posits two connections between his suit and this District. Neither is persuasive, and both smack of an attempt to "manufacture venue . . . . [b]y naming high government officials as defendants," Cameron v. Thornburgh, 983 F.2d 253, 256 (D.C. Cir. 1993), or by "recasting local determinations as 'broad national policy directives,'" PSV Enters., 2021 WL 2115251, at *3 (quoting EfficientIP, Inc. v. Cuccinelli, Case No. 1:20-cv-01455 (TNM), 2020 WL 6683068, at *3 (D.D.C. Nov. 12, 2020)).

Plaintiff first argues that "[t]he denial of [his] immigration application was directed by these Defendants operating from this district." Pl.'s Opp'n at 5; accord id. at 3 ("[The] erroneous

9

denial of Plaintiff's I-140 petition . . . [was] directed by the Defendant agencies."). But there are simply no allegations in plaintiff's complaint that anyone in the District of Columbia even knew about, let alone participated in, the adjudication of Dr. Melnattur's petition. This Court will not credit conclusory assertions that appear for the first time in an opposition to a motion to transfer; after all, "[i]t is well-settled . . . that a plaintiff may not amend his complaint in a brief in opposition to a motion[.]" Patel v. Ambit Grp., No. CV 18-2985 (RDM), 2019 WL 4472124 (D.D.C. Sept. 17, 2019) (citing Arbitraje Casa de Cambio, S.A. de C.V. v. U.S. Postal Serv., 297 F. Supp. 2d 165, 170 (D.D.C. 2003)). In the absence of any actual allegations of case-specific "direction" by D.C.-based officials in the complaint, this contention fails.

Plaintiff cites Stewart v. Azar, 308 F. Supp. 3d 239 (D.D.C. 2018), for the proposition that "'[f]ederal-agency action that occurs [in D.C.] can provide meaningful ties to support retention' of a case in the D.D.C." Pl.'s Opp'n at 3 (quoting Stewart, 308 F. Supp. 3d at 247). While this is a true statement of law, it does not apply here. The plaintiffs in Stewart were Medicaid enrollees suing to challenge the federal government's approval of a new Medicaid program in Kentucky. Stewart, 308 F. Supp. 3d at 244. In denying the government's motion to transfer, Judge Moss found that "D.C.-based agency officials drafted, signed, and disseminated [a challenged letter]" and that "those same agencies worked with Kentucky to develop, and ultimately approve [the challenged program]." Id. at 247. This "heavy, personal involvement by District-based government officials" was what supported retention of the case. Id. (cleaned up) (quoting Wilderness Soc'y v. Babbitt, 104 F. Supp. 2d 10, 13–14 (D.D.C. 2000)). Plaintiff has alleged no analogous facts here.[5]

---

[5] The same is true of another case plaintiff cites for the "ties" between D.C. and this lawsuit: Greater Yellowstone Coal. v. Bosworth, 180 F. Supp. 2d 124 (D.D.C. 2001). See Pl.'s Opp'n at 8. In that case, environmental groups challenged the issuance of a cattle-grazing permit on national forest land near Yellowstone National Park.

Plaintiff also argues that this District is the proper forum because "Defendants were directly involved in establishing the guidelines under which immigrant applications are reviewed." Pl.'s Opp'n at 4; accord, e.g., id. at 7 ("[D]irectives related to the approval and denial of EB-1 visas came from USCIS headquarters in D.C."). Relatedly, he objects to the characterization of Nebraska as the locus of his claim on the ground that his petition "was . . . assigned to [the NSC] by default based on the policies . . . formulated within [the District of Columbia]." Id. at 6.

To the extent Dr. Melnattur suggests an "undisclosed agency-level shift in policy" affecting the adjudication of his petition, PSV Enters., 2021 WL 2115251, at *3, such a claim is, again, entirely unsupported by allegations in his complaint. And if the suggestion is that venue is appropriate in D.C. simply because generally-applicable guidelines for handling immigration petitions were crafted in D.C.,[6] this too fails to establish that Dr. Melnattur's case arose in this District. Although general guidance documents (such as the Adjudicator's Field Manual, see Compl ¶ 6) and USCIS's case assignment protocol are technically D.C.-based policies which affected the processing of Dr. Melnattur's petition, the mere fact that a policy was promulgated in Washington is insufficient to support venue in this District for a suit challenging a particular agency action. See Pengbo Li, 2021 WL 1124541, at *4 (rejecting a similar argument). To hold otherwise would render this District the appropriate forum for a massive swath of lawsuits with only the most tenuous connection to conduct actually occurring here. Rather, what matters is the locus of the decisionmaking process on Dr. Melnattur's petition. See, e.g., Gyau, 2018 WL

---

Greater Yellowstone Coal., 180 F. Supp. 2d at 125. In support of their claims, the plaintiffs submitted a declaration from a former Department of the Interior official stating not only that senior officials had discussed the challenged permit but also that "[t]hree of the meetings addressing the . . . permit occurred at the Forest Service's headquarters in Washington, D.C." See id. at 127. By contrast, Dr. Melnattur has neither pled nor put forward evidence suggesting that USCIS leadership ever discussed his visa application.

[6] Plaintiff offers no support for his claim that the relevant case assignment policy was actually formulated in the District of Columbia. But, as the claim is unavailing either way, the Court will assume arguendo that any relevant policy has a nexus to this District.

4964502, at *2 ("[T]o determine where the claim arose in cases brought under the APA, courts generally focus on where the decisionmaking process occurred—here, the Eastern District of Virginia, where USCIS interviewed plaintiffs, adjudicated their petition, and denied their appeal." (internal quotation marks omitted)); see also Trout Unlimited v. U.S. Dep't of Agric., 944 F. Supp. 13, 18 (D.D.C. 1996) (granting transfer away from D.C. because "[t]he decision-making process at both the forest and regional level occurred in Colorado, not in Washington, D.C., and not as a result of a directive from a [D.C.] agency").

Crucially, the present suit does not challenge the validity of any agency-level policy. The facts pled relate only to the NSC's handling of Dr. Melnattur's own petition, and the relief requested solely concerns the adjudication of that one petition. See Compl. at 9 (asking the Court to "declare that USCIS's decision[] to deny [Dr. Melnattur's petition] was unlawful" and to "[o]rder USCIS to approve [the petition]"). Indeed, the Court understands Dr. Melnattur's claim to rest squarely on the correctness of the agency's policies; he objects only to the allegedly erroneous application of the guidelines in his case. And "when the implementation of a policy is at issue, and that implementation took place in a different judicial district, venue is more appropriately laid in that other district." Pasem, 2020 WL 2514749, at *4 (cleaned up) (quoting Huskey v. Quinlan, 785 F. Supp. 4, 7 (D.D.C. 1992)); see also Wei Lai, 2021 WL 2073403, at *4 ("Simply put, Plaintiffs are not challenging the validity or existence of any USCIS rule; they are challenging the decision rendered by the California Field Office to deny their petition and application. That challenge is more appropriately brought in that jurisdiction.").

Finally, the private interest factors related to convenience weigh slightly in favor of transfer. To begin with, Missouri and, to a lesser extent, Nebraska, will be more convenient for the parties. Plaintiff argues that "[d]efendants' maintenance of offices in D.C. . . . outweigh[s] the

residence of one Plaintiff in Missouri," Pl.'s Opp'n at 5, but the Court is unpersuaded. The federal government has litigators standing by across the country to defend precisely this kind of lawsuit, and although plaintiff skates over the hardship of litigating this case several hundred miles and a time zone away from home, it would undoubtedly be more convenient for Dr. Melnattur to pursue this case in Missouri or even Nebraska. See Aishat, 288 F. Supp. 3d at 270 ("Plaintiff resides in [the transferee court], so he 'cannot reasonably claim to be inconvenienced by litigating in [his] home forum.'" (quoting Tower Labs, 285 F. Supp. 3d at 326)).

Furthermore, any relevant evidence will be located in Nebraska. "In a case involving review of an agency action, 'the location of witnesses is not a significant factor,' but 'the location of the administrative record, however, carries some weight.'" Aftab, 597 F. Supp. 2d at 83 (D.D.C. 2009) (cleaned up) (quoting Sierra Club v. Flowers, 276 F. Supp. 2d 62, 69 (D.D.C. 2003)). This principle applies here: "because this matter arises under the APA, [Dr. Melnattur's] claims will most likely be resolved based on the administrative record without the need for discovery or testimony." Akinyode, 2021 WL 3021440, at *4. The vast majority of the administrative record related to Dr. Melnattur's petition was created and likely will be located in Nebraska, and even if plaintiff does seek witness testimony, the individuals most likely to have relevant information (other than Dr. Melnattur himself) are NSC personnel located in Nebraska. See Pengbo Li, 2021 WL 1124541, at *5.

In sum, the private interest factors weigh strongly in favor of transferring this case away from the District of Columbia. The Eastern District of Missouri is more convenient for plaintiff, but every other private interest factor is either neutral or weighs in favor of Nebraska.

### b. Public Interest Factors

The Court now turns to the three public interest factors: "(1) the transferee court's familiarity with the governing laws and the pendency of any related actions; (2) the relative congestion of calendars in each court; and (3) the local interest in resolving the controversy." Akinyode, 2021 WL 3021440, at *5.

As for the first factor, when an action is governed solely by federal law, "[t]he transferee district is presumed to be equally familiar with the federal laws governing [the plaintiff's] claims." Wolfram Alpha, 490 F. Supp. 3d at 335 (alterations in original) (quoting Aftab, 597 F. Supp. 2d at 83). "That principle applies even to federal administrative law cases, despite the relative concentration of such cases in [the District of Columbia]." Akinyode, 2021 WL 3021440, at *5 (quoting Ike, 2020 WL 7360214, at *3). This factor is thus neutral with respect to the proposed transfer.

The Court next considers the congestion on the dockets of each relevant court. It can be "difficult to assess" this factor accurately, id., as "statistics provide, at best, only a rough measure of the relative congestion of the dockets," id. (quoting United States v. H&R Block, Inc., 789 F. Supp. 2d 74, 84 (D.D.C. 2011)); see also Wolfram Alpha, 490 F. Supp. 3d at 337 ("[T]hese statistics may be influenced by factors other than congestion, such as, for example, difference in the types of cases that are likely to be filed in each district." (citing Aishat, 288 F. Supp. 3d at 271)). Based on available data, however, this factor weighs slightly in favor of retaining this case in the District of Columbia. As of June 30, 2021, this District had 396 cases pending per judgeship, while that figure was 452 in the Eastern District of Missouri and 449 in the District of Nebraska. See U.S. District Courts—National Judicial Caseload Profile (June 30, 2021) at 2, 59, 61, available at https://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2021/06/30-1.

14

Likewise, civil cases in this District move faster on average, taking 4.8 months between filing and disposition compared to 8 months in the Eastern District of Missouri and 7.1 months in Nebraska. Id.  Thus, the relative congestion of the relevant districts slightly favors the District of Columbia, though "none of the various districts at issue here have such enormous backlogs and congestion that transfer would not be in the public interest." Pasem, 2020 WL 2514749, at *3.

The Court must also, however, consider future congestion.  If plaintiffs are permitted to "manufacture venue in the District of Columbia," Cameron, 983 F.2d at 256, then "this District could become deluged with immigration cases," Wolfram Alpha, 490 F. Supp. 3d at 335.  Of course, this concern, standing alone, is no reason to transfer a case.  If this District truly were the optimal forum for these cases, then the accompanying congestion would simply be an inconvenience concomitant to the judicial responsibility to hear and decide cases.  But as the reasoning above (and the unanimous conclusion of the judges in this District) demonstrates, this District is not the best forum for this category of lawsuits.  This factor, then, is a wash, with perhaps a slight tilt in favor of retention.

The final public interest factor to consider—indeed, the "public interest factor of most importance," Bourdon, 235 F. Supp. 3d at 308—is "the local interest in deciding local controversies at home," Wolfram Alpha, 490 F. Supp. 3d at 338.  In general, "[c]ontroversies should be resolved in the locale where they arise,'" and "[t]his policy rationale applies equally to the judicial review of an administrative decision which will be limited to the administrative record." Trout Unlimited, 944 F. Supp. at 19 (citations omitted).  In assessing this factor, courts take into account a variety of considerations, including "where the challenged decision was made; whether the decision directly affected the citizens of the transferee state; the location of the controversy[;] . . . whether the controversy has some national significance; and whether there was

15

personal involvement by a District of Columbia official." Bourdon, 235 F. Supp. 3d at 308 (quoting Otay Mesa Prop. L.P. v. U.S. Dep't of Interior, 584 F. Supp. 2d 122, 126 (D.D.C. 2008)).

The same factors that led the Court to conclude that Dr. Melnattur's claim arose in Nebraska also support Nebraska's local interest in deciding this case. As discussed above, it is beyond dispute that the "challenged decision was made" in Nebraska, and Dr. Melnattur has failed to allege "personal involvement" by a D.C. official. Relatedly, Nebraska is the "location of the controversy," a fact made particularly clear by the relief plaintiff seeks: an order declaring events occurring in Nebraska unlawful and compelling USCIS employees in Nebraska to take new actions in Nebraska. See Compl. at 9. This is a surefire indication that this controversy is Nebraskan rather than one local to the District of Columbia. See, e.g., PSV Enters., 2021 WL 2115251, at *4 (finding that Nebraska had a stronger local interest because the plaintiff sought "relief that 'ultimately involves a determination of whether [NSC] should be compelled to' approve PSV's applications" (quoting Aftab, 597 F. Supp. 2d at 84))); Bourdon, 235 F. Supp. 3d at 309 (noting that one "fact[] point[ing] toward the local nature of this controversy" was that "Plaintiff asks this Court to compel action . . . that would occur in Florida" (citing Abusadeh v. Chertoff, Civ. A. No. 06-2014 (CKK), 2007 WL 2111036 (D.D.C. July 23, 2007))). Missouri too has a (somewhat weaker) local interest in this case, as the challenged decision "directly affected" Dr. Melnattur, a "citizen[] of" Missouri.

Plaintiff says that his case is one of "national significance," arguing that the relief he seeks "will not only directly affect him" but will have ramifications for the "countless numbers of other visa applicants [who] have been impacted by these directives." Pl.'s Opp'n at 8. Yet this argument is belied by the terms of his own complaint: Dr. Melnattur requests only case-specific relief, and he has not actually challenged any nationwide policy or "directive." Other than the conclusory

16

statement quoted above, plaintiff provides no support for how a victory in this lawsuit will affect anyone other than him. To be sure, the Court acknowledges that this is a case of immense significance for Dr. Melnattur. That, however, is the extent of it. "In a case that challenges an adverse decision on a single visa petition, the issue is not of national significance, but 'presents an issue of far more limited importance.'" Wolfram Alpha, 490 F. Supp. 3d at 339 (quoting Ngonga, 318 F. Supp. 3d at 277).

Thus, one public interest factor is neutral, one is mixed but weighs slightly against transfer, and the "most important[t]" factor, Bourdon, 235 F. Supp. 3d at 308, strongly supports transfer. Docket congestion in Nebraska and Missouri is roughly equal, and although both fora have an interest in deciding this case, the Court deems Nebraska's "local interest" much stronger than Missouri's. The public interest factors, then, like the private interest factors, favor transferring this case to the District of Nebraska.

## Conclusion

To sum up: The private and public interest factors both weigh strongly in favor of a transfer out of this District. The only factor even somewhat favoring retention of this case is the slightly-less-severe congestion in this Court compared to the two proposed transferee courts, and even then, the Court is reluctant to open a floodgate for administrative challenges with little or no connection to this District. As between the proposed transferee courts, the District of Nebraska is the superior forum. Although Missouri would be most convenient for plaintiff and also possesses a moderate local interest in the case due to plaintiff's residency there, Nebraska, as the situs of the challenged

17

action, the holder of the strongest local interest in the dispute, and the location of all relevant witnesses and evidence, is the optimal venue for this litigation.[7]

For the foregoing reasons, the Court will grant the government's motion to transfer. It will also extend the government's time to respond to plaintiff's complaint until twenty-one days after this case is docketed in the District of Nebraska. A separate Order will issue on this date.

/s/
JOHN D. BATES
United States District Judge

Dated: August 23, 2021

---

[7] In deciding between the two proposed transferee courts, the Court has also considered Dr. Melnattur's representation that he believes his residence is "immaterial" to the present inquiry, instead focusing on where the claim arose and where the "processing of this case took place." See Pl.'s Opp'n at 5. Of course, a plaintiff cannot waive a factor the court must consider, but this representation nonetheless suggests a willingness to incur whatever inconvenience might arise from litigation in a forum other than the Eastern District of Missouri. In addition, the Court's choice of Nebraska over Missouri was influenced by a desire to decide like cases alike within this District. As two essentially identical cases have been transferred to the District of Nebraska in the past year, see PSV Enters., 2021 WL 2115251; Pengbo Li, 2021 WL 1124541, doing the same here maintains important consistency between materially identical cases.